UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS ANTHONY GREENBERG,<br><br>Petitioner,<br><br>v.<br><br>PATRICK COVELLO, *Acting Warden, Mule Creek State Prison*,<br><br>Respondent. | No. 2:19-cv-02238-DAD-AC (HC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND GRANTING PETITION FOR HABEAS CORPUS<br><br>(Doc. No. 23) |

Petitioner Morris Anthony Greenberg, a state prisoner proceeding through counsel, filed the pending petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

In his petition, petitioner asserts that his Sixth and Fourteenth Amendment rights under the U.S. Constitution were violated when he was tried and convicted for the first-degree murder of Anthony Dumont, for which he is currently serving a 50-years-to-life sentence in state prison. (Doc. No. 1-1 at 6, 27.) Petitioner asserts four claims for federal habeas relief in his petition. (*See generally*, Doc. No. 1-1.)

On January 5, 2024, the assigned magistrate judge issued the pending findings and recommendations recommending that federal habeas relief be granted as to petitioner's first claim, in which petitioner argued that his trial counsel's failure to investigate and present a mental

health defense to support his theory of imperfect self-defense constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. No. 23.)[1] The findings and recommendations recommended denial of the petition as to petitioner's other three claims for federal habeas relief. (*Id.*) Those findings and recommendations were served on all parties with notice that any objections to the findings and recommendations were to be filed within fourteen (14) days. (*Id.* at 39.) On January 19, 2024, respondent filed lengthy objections to the findings and recommendations. (Doc. No. 24.) Petitioner filed a response thereto on May 17, 2024, but did not file objections of his own. (Doc. No. 31.)

Respondent's objections span 41 pages and raise numerous arguments as to why fair-minded jurists could find that petitioner did not receive ineffective assistance of trial counsel under *Strickland*. (Doc. No. 24.) The crux of these objections is that: (1) the evidence introduced at petitioner's trial supported reasonable conclusions that trial counsel's investigation was sufficiently thorough under the circumstances; and (2) it was not reasonably likely that an in-person mental health evaluation would have yielded a different result. (*See id.* at 16.) While the undersigned will address certain objections that warrant further discussion below, many of respondent's objections advance arguments that were already thoroughly and correctly addressed in the findings and recommendations or fail to articulate a cognizable basis for rejecting the findings and recommendations. Such objections therefore do not merit further discussion and do not alter the undersigned's decision to adopt the findings and recommendations for the reasons explained below.

---

[1] Although the findings and recommendations found that the California Supreme Court's decision in petitioner's direct appeal to be the decision that is subject to AEDPA review, they also analyzed the El Dorado County Superior Court's decision in the alternative, in the event the assigned district court disagreed on which state court decision is subject to review by this federal habeas court. (*See* Doc. No. 23 at 23–28; *see also id.* at 18 n.7 ("Should the assigned district judge disagree, the undersigned provides an alternative discussion of the superior court's decision below.")). Notably, in reviewing both the California Supreme Court's decision and the El Dorado County Superior Court's decision, the magistrate judge came to the same conclusion: § 2254(d) poses no barrier to habeas relief as to petitioner's first claim. (*See generally*, Doc. No. 23.) After reviewing *de novo* petitioner's claim of ineffective assistance, the magistrate judge concluded that petitioner had satisfied both prongs of the *Strickland* standard. (*Id.* at 28–30.) Because the undersigned finds that either approach would yield the same result, the court need not decide which of the state court decisions is subject to AEDPA review.

**A.      Respondent's Objections as to the Sufficiency of Defense Counsel's Investigation**

The findings and recommendations concluded that "[c]ounsel's failure to conduct even a preliminary mental state investigation was so clearly unreasonable that the California Supreme Court cannot reasonably have found that the petitioner failed to state a *prima facie* case of deficient performance." (Doc. No. 23 at 21.) The magistrate judge also determined that there was no strategic or tactical justification for trial counsel's failing to ask Dr. Eugene P. Roeder (whose services had been authorized by the trial court and who was well known to petitioner's trial counsel) or another expert to evaluate petitioner's mental health before settling on a trial strategy.[2] (*Id.* at 20.)

Respondent objects to this finding, claiming that a fair-minded jurist could find that trial counsel performed a reasonable investigation under the circumstances. (Doc. No. 24 at 16–17.) Respondent asserts that trial counsel consulted with several individuals who had psychology backgrounds and none of them indicated that mental health defenses should be pursued. (*Id.* at 32.) Therefore, respondent claims that counsel's preliminary investigation inherently ruled out mental health defenses. (*Id.*)

Petitioner counters that there is no evidence showing that defense counsel's consultations specifically addressed whether a psychological evaluation should be conducted or whether a mental health defense should be pursued. (Doc. No. 31 at 36, 61.) Petitioner contends that given

---

[2] In his objections, respondent argues that "'[s]trategic' or 'tactical' is not the standard. Instead, counsel's decisions need only be reasonable under the circumstances." (Doc. No. 24 at 34) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ('The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.")). However, as petitioner argues in his response, "[b]y finding that [trial counsel] lacked a strategic or tactical rationale, the Magistrate necessarily also found that his decision was unreasonable." (Doc. No. 31 at 64.) The court agrees that the decision by petitioner's trial counsel not to investigate petitioner's mental health was not reasonable. (Doc. No. 23 at 20–21) ("Although counsel was aware of PTSD and knew about petitioner's law enforcement background, and despite the big flashing red light of petitioner's attempted suicide, he 'did not see a mental defense in this case.' And despite recognizing that the suicide attempt needed to be addressed by the defense at trial, counsel failed to seek a professional opinion regarding petitioner's state of mind. On the facts of this case, it was objectively unreasonable for trial counsel not to explore the question whether a defense based on petitioner's mental state, or incorporating expert mental health opinion evidence, was available.").

1  his trial counsel's poor recollection and record-keeping regarding these experts and the seemingly
2  limited scope of his interactions with them, these few consultations do not constitute a sufficient
3  investigation to justify neglecting to have petitioner psychologically evaluated. (*Id.* at 35.)
4  Indeed, respondent provides minimal detail as to what petitioner's trial counsel discussed with
5  these experts who had psychology backgrounds. Many of the interactions appear to have been
6  minimal, and defense counsel himself even explained that one of these experts was unreliable.
7  (*Id.* at 31–35.) Therefore, respondent's argument that conversations petitioner's trial counsel had
8  with psychology experts ruled out a mental health defense is unavailing.

9  Respondent also contends in his objections that trial counsel's decision to forgo an in-
10 person mental health evaluation was a strategic one, because "perfect self-defense, and therefore
11 acquittal, emerged as the clear choice." (Doc. No. 24 at 18.) According to respondent, a mental
12 health defense would have guaranteed at least a manslaughter conviction, leading both trial
13 counsel and petitioner to focus on a strategy of acquittal based on perfect self-defense. (*Id.* at 13.)
14 The court is not persuaded by this argument. As petitioner points out in his petition and in his
15 response to the objections, a mental health defense could have been employed to support both the
16 subjective element and the objective reasonableness of petitioner's actions, as well as his
17 credibility. (*See* Doc. Nos. 1-1 at 15; 31 at 30). Under similar circumstances, the Ninth Circuit
18 has stated:

> The State has been unable to explain why self-defense and a defense based on mental illness were mutually exclusive under the existing circumstances. Indeed, the two defenses were quite likely to be complementary: [the petitioner's] fear for his own safety during the fight with [the victim] could have been exacerbated by his psychological history of multiple trauma.

23 *Seidel v. Merkle*, 146 F.3d 750, 756 (9th Cir. 1998)). Such is the case here. It is simply not true
24 that presenting a mental health defense would have guaranteed at least a manslaughter conviction,
25 as contended by respondent. A person with PTSD can still, of course, harbor an objectively
26 reasonable belief in the need to defend themselves. In short, there was nothing inconsistent in
27 pursuing both a mental health defense and a self-defense theory in this case and the failure to
28 conduct any investigation into the former cannot be justified as a tactical or strategic decision.

4

Furthermore, that counsel and petitioner chose to focus on acquittal could not have justified a failure to obtain a psychological evaluation in this case. *See Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017)[3] ("[The petitioner's] counsel could not have reasonably concluded that obtaining a psychological examination would conflict with his trial strategy without first knowing what such an examination would reveal."). The Supreme Court has rejected "the attempt to justify [a] limited investigation as reflecting a tactical judgment." *Wiggins v. Smith*, 539 U.S. 510, 527–28 (2003) (holding that a state court opinion unreasonably applied the *Strickland* standard where the state court merely assumed the investigation underlying the alleged strategic decision was adequate, whereas the evidence demonstrated it was not adequate); *see also Williams v. Taylor*, 529 U.S. 362, 396 (2000) (holding that the failure to uncover mitigating evidence was "not justified by a tactical decision" where counsel "did not fulfill their obligation to conduct a thorough investigation of the defendant's background").[4]

---

[3] In his objections, respondent argues that the findings and recommendations distort the Ninth Circuit's holding in *Weeden*. (Doc. No. 24 at 35.) The Ninth Circuit in its decision in *Weeden* stated that "[t]he correct inquiry is not whether psychological evidence would have supported a preconceived trial strategy, but whether Weeden's counsel had a duty to investigate such evidence in order to form a trial strategy, considering 'all the circumstances.'" *Weeden*, 854 F.3d at 1070 (quoting *Strickland*, 466 U.S. at 691). Respondent contends that the findings and recommendations' "analyses bend this requirement into forcing counsel to perform a thorough investigation into a defense before he can even determine whether he must choose the defense for trial. That is incorrect, especially in light of the Supreme Court's recognition that it can be reasonable not to investigate." (Doc. No. 24 at 35.) However, in *Strickland*, the Supreme Court made clear that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. As explained in the findings and recommendations, petitioner's counsel did neither.

[4] Respondent argues that the findings and recommendations misinterpret the Supreme Court's decision in *Williams* by suggesting that "counsel must conduct a 'thorough investigation' before a decision can be considered strategic under *Strickland*." (Doc. No. 24 at 31) (citations omitted). According to respondent, the Supreme Court in its decision in *Williams* did not require a thorough investigation in all cases but only found it unreasonable, given the specific circumstances in that case, for counsel to have failed to investigate the defendant's background. (*Id.*) Respondent contends that the findings and recommendations' contrary standard led to flawed conclusions. (*Id.*) However, as noted in the findings and recommendations, defense counsel in this case was aware of PTSD, petitioner's law enforcement background, and that he attempted suicide immediately after the shooting. (Doc. No. 23 at 20.) Respondent's objections fail to explain why these circumstances did not require defense counsel to seek a psychological evaluation of petitioner even under *Williams*.

Respondent argues that the findings and recommendations improperly establish a rule requiring a minimum level of investigation before counsel can decide not to pursue a defense. (Doc. No. 24 at 30.) However, that argument is misplaced. Rather than establishing a blanket rule, the findings and recommendations merely emphasize that, given the specific facts of this case, defense counsel had an obligation to seek a psychological evaluation. (Doc. No. 23 at 20–22.)

**B.     Respondent's Objections as to Prejudice**

In the findings and recommendations, the magistrate judge stated that she could "identify no rationale that would reasonably support the California Supreme Court's finding that petitioner failed to present a *prima facie* case of prejudice from trial counsel's error." (Doc. No. 23 at 22.) In the alternative analysis reviewing the superior court's decision, the magistrate judge found that "the Superior Court's prejudice methodology was both contrary to and [was] an unreasonable application of *Strickland*." (*Id.* at 25.)

In his objections, respondent argues that a fair-minded jurist could find that it was not reasonably probable that an in-person mental health evaluation would have yielded a different result. (Doc. No. 24 at 16–17.) Respondent argues that petitioner did not prove that it was reasonably probable that: (1) Dr. Roeder would have diagnosed petitioner as suffering with PTSD before the trial; (2) counsel would have presented that theory to the jury; or (3) the jury would have believed that theory and not voted unanimously to convict petitioner of murder. (*Id.* at 22–23.) The court addresses each of these arguments in turn.

First, respondent argues in his objections that "[b]ecause petitioner did not present Roeder as a post-trial witness, he was forced to prove that Roeder would have diagnosed PTSD by proving every reasonable mental health professional would have diagnosed PTSD." (Doc. No. 24 at 23.) Respondent contends that petitioner did not do so, noting that "[t]he state superior court found Berg's conclusions to be overstatement given the number of CDCR mental health professionals who did not diagnose petitioner with PTSD." (*Id.*) Thus, respondent objects to the magistrate judge's conclusion that the superior court's fact-finding process was unreasonable because the superior court excluded the opinions appearing in the CDCR medical records but then

6

relied on those same opinions to conclude that it was impossible to predict what diagnosis would have been arrived at if petitioner had been psychologically evaluated in 2011. (Doc. No. 23 at 27–28; *see also id*. at 27 (emphasizing that those mental health records were not admitted into evidence for the mental health professionals' opinions contained therein)). The undersigned agrees with the findings and recommendations because the superior court employed an ineffective factfinding process in relying on evidence it had previously ruled was inadmissible in finding that petitioner had not met his burden of establishing he would have been diagnosed with PTSD in 2011.[5] *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), *abrogation on other grounds recognized by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). Also, as the pending findings and recommendations highlight, the superior court's approach ignored the only mental health expert evidence in the record, that from Dr. Paul S.D. Berg, who stated that the variation in PTSD diagnoses in the CDCR records did not undermine his assessment of petitioner. (Doc. No. 23 at 28); *see Taylor*, 366 F.3d at 1001 ("[A]s the Supreme Court noted in *Miller-El*, the state-court fact-finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim.") (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Second, respondent argues that even if a mental health expert had diagnosed petitioner with PTSD, trial counsel would have not presented this evidence at trial because an imperfect self-defense theory would have conflicted with the primary defense of perfect self-defense. (Doc. No. 24 at 24.) This argument is unpersuasive. The undersigned again finds that respondent fails to explain why PTSD evidence would be incompatible with a perfect self-defense theory. Those defenses were not inconsistent in any way. Moreover, petitioner's trial counsel explicitly stated that he intended argue both perfect and imperfect self-defense as "alternate theories," and at trial he sought to admit petitioner's prior police training to support both his imperfect and perfect self-

---

[5] Respondent construes the superior court's reliance on the opinions in the CDCR medical records as a state court determination on a state law question and argues that it is therefore inappropriate for this court to reexamine the issue. (Doc. No. 24 at 40.) Respondent's argument in this regard is unavailing because the issue here is not a state law question but concerns the superior court's faulty factfinding process in using its own unsupported opinion rather than relying on any evidence in the record.

7

defense theories. (Doc. No. 31 at 23–25.) This further undermines respondent's contention that these defense theories were mutually exclusive. Trial counsel's focus on presenting evidence of the petitioner's police training and experience was ultimately rejected by the court, which deemed such evidence to be irrelevant, as the case involved a personal dispute rather than an officer-involved shooting. (*Id.* at 24.) Thus, while respondent contends that "[c]ounsel's extremely mild treatment of the alternate-theory instructions indicates counsel would not have wanted to present evidence that would have severely undermined (if not fatally) his primary defense seeking acquittal," (Doc. No. 24 at 36), it appears that this mild treatment was due to the trial court's rejection of his prior police training evidence to support imperfect self-defense, rather than a strategic decision by counsel based on the alleged incompatibility of perfect and imperfect self-defense theories.

Third and finally, regarding the jury's response to PTSD evidence, respondent argues that petitioner could not establish whether the prosecutor would have presented a rebuttal witness or whether the jury would have believed defense-friendly PTSD evidence. (Doc. No. 24 at 26.) On this point, the findings and recommendations correctly explain as follows:

> The court's own inability to "predict" what rebuttal evidence the prosecution would have developed in response to a defense trial expert is immaterial, and in any event does not weigh against relief. It is petitioner's responsibility on an ineffective assistance claim to show the evidence that a reasonable pretrial investigation would have uncovered. Petitioner met this burden of production by presenting the opinions of Dr. Berg. The habeas evidentiary hearing was the opportunity for the prosecution to rebut Dr. Berg's opinion with competing expert opinion testimony if it wished to do so, and it did not avail itself of that opportunity.

(Doc. No. 23 at 26.) Importantly, *Strickland* does not permit the habeas court to reimagine the entire trial. *See Strickland*, 466 U.S. at 695–96 ("Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors"); *see also Hardy v. Chappell*, 849 F.3d 803, 823 (9th Cir. 2016) ("*Strickland* does not permit the court to reimagine the entire trial. We must leave undisturbed the prosecution's case. We only envision what [the

8

petitioner's counsel] should have presented in [the petitioner's] defense and determine how that would have altered the trial. In doing so, we may not invent arguments the prosecution could have made if it had known its theory of the case would be disproved."). The undersigned therefore concurs with the conclusions reached in the findings and recommendations that the court's own inability to predict what rebuttal evidence the prosecution would have developed in response to a defense trial expert is immaterial and does not weigh against the granting of relief and that there is a reasonable probability that the outcome of petitioner's trial would have been different had the jury been presented with expert evidence concerning petitioner's mental health. (*See* Doc. No. 23 at 26, 29–30.) Notably, "Dr. Berg's testimony directly addressed the most important issues that petitioner's jury had to decide," including whether petitioner killed Dumont with malice, believed Dumont was retrieving a gun from his truck at the time petitioner shot him, how petitioner could have believed there was a gun when there was evidence indicating there was no gun found in the truck, and whether petitioner shot himself out of remorse for his own mistake or to escape the consequences of deliberate murder. (*Id.* at 22.)

In sum, none of respondent's objections provide a basis upon which to reject the findings and recommendations.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, including respondent's objections and petitioner's response thereto, the court finds the findings and recommendations to be supported by the record and by proper analysis.

## CONCLUSION

Accordingly:

1. The findings and recommendations issued on January 5, 2024 (Doc. No. 23) are adopted;

2. The petition for writ of habeas corpus (Doc. No. 1) is granted with respect to petitioner's claim that he received ineffective assistance of counsel based on his trial counsel's failure to investigate and present mental health evidence (claim one), and is otherwise denied;

9

3. Petitioner's conviction for first-degree murder is vacated;

4. Respondent is directed to release petitioner from custody unless the State of California commences a new trial within ninety (90) days from the date judgment is entered absent further order of the court; and

5. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**September 4, 2024**__

DALE A. DROZD
UNITED STATES DISTRICT JUDGE